UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-61276-CIV-GOLD/McALILEY
(Consolidated with Case No.: 09-61945-CIV-GOLD)

LORI D RITENOUR and
STEVEN G RITENOUR, et al.

  Appellants,

v.

LES S. OSBORNE,

  Appellee.
_____/

ORDER AFFIRMING BANKRUPTCY COURT;
CANCELLING ORAL ARGUMENT; CLOSING CASE

**I. Introduction**

This is an appeal filed by Lori D. Ritenour, Steven G. Ritenour, and Lorraine Vreeland (collectively, "Appellants") of two orders issued by the Bankruptcy Court in connection with Debtor S&I Investment's ("Debtor") bankruptcy proceedings. Appellants – representing a two-thirds interest in the parcel of real property at issue[1] – argue that the Bankruptcy Court erred because: (1) it declined to invalidate a 99-year lease that was assigned to the Debtor; and (2) it concluded that certain escalator provisions contained in the 99-year lease were waived for purposes of determining the cure amount[2] owed to Appellants. I have jurisdiction pursuant to 28 U.S.C. § 158(a). Having considered the relevant submissions, the applicable law, and being otherwise duly advised in the

---

[1] The other third is owned by the Richmond Trust, a non-party to this appeal.

[2] 11 U.S.C. § 365(b)(1)(A) (providing that "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease . . . the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default . . .").

Premises, I affirm the Bankruptcy Court for the reasons that follow.

## II.   Factual and Procedural Background

On October 29, 2009, Debtor S&I Investments, a partnership owned in equal shares by Ilene and Stephanie Richmond ("the Richmonds"), was involuntarily placed into bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.[3]  In its filings with the Bankruptcy Court, the Debtor listed an unexpired lease ("the Lease") of a Fort Lauderdale parcel of real property as an asset.[4]  The Lease was originally entered into on March 12, 1955 by Corenila DeVeaux Vreeland, as lessor,[5] and Ilene Corporation, as lessee.  While the original term of the Lease was 49 years, the Lease was amended in 1962.  The amendment modified the annual rent payment and extended the total term of the Lease to 99 years – i.e., until 2054.

As noted, the original lessee under the Lease was Ilene Corporation.  However, on April 10, 1991, Ilene Corporation assigned the Lease to the Richmonds.  The validity of this assignment is undisputed.  Subsequent to the 1991 assignment, the Richmonds formed the Debtor and the Lease was assigned once again – this time, to the Debtor.[6]  The assignment to the Debtor was not recorded or evidenced by a written instrument, and Appellants now contest its validity, despite having accepted rental payments from the

---

[3] Appellee Les Osborne is the Chapter 11 Trustee.

[4] "Other than cash and causes of action, if any, the sole material asset of the estate is its alleged interest in the above-referenced ground lease." **[BK DE 139]**.

[5] The parcel at issue is no longer owned by Ms. Vreeland.  Instead, "the [p]roperty is owned by three (3) fee owners consisting of realty trusts: (i) the Ritenour Trust; (ii) the Vreeland Revocable Trust; and (iii) the Richmond Trust (collectively, the 'Fee Owners' or each, a 'Co-Owner')." **[BK DE 208, pp. 2-3]**.

[6] In 1995, the Debtor sub-leased the property to non-party Payless Flea Market.

Debtor, without restriction, since at least 1997.

The parties agree that the Lease – as amended – contains two sections that are relevant for purposes of this appeal. The first relates to assignments of the Lease and provides that the "[L]ease is freely assignable; but no assignment or transfer shall be valid unless . . . evidenced by written instrument . . . executed in such fashion as to entitle it to recording: nor shall such assignment be deemed valid unless . . . promptly filed for record" in Broward County. (Lease, Art. VII). The second section at issue is set forth in the 1962 Amendment and will be referred to as the "Escalator Provisions." The Escalator Provisions provide for rental payments to be increased periodically based upon a formula tied to the Consumer Price Index ("CPI") (Amendment to Lease, ¶ 2). In addition to challenging the validity of the assignment from the Richmonds to the Debtor, Appellants also contend that they are owed a substantial sum by the Debtor because the Debtor never increased its rental payments in accordance the CPI formula set forth in the Escalator Provisions.

Following an evidentiary hearing, the Bankruptcy Judge concluded, *inter alia*, that: (1) the assignment of the Lease to the Debtor should not be invalidated; and (2) the Escalator Provisions were waived by virtue of the Fee Owners'[7] course of conduct and are therefore unenforceable for purposes of calculating the cure amount due under the Lease.[8] *See* **[BK DE 139]**; **[BK DE 208]**. Appellants now challenge these conclusions.[9]

---

[7] *See* note 5, *supra.*

[8] The Bankruptcy Court did note, however, that the "Fee Owners' prior waivers of the Escalator Provision do not prevent enforcement of the provision on a going forward basis." **[BK DE 208, p. 15]**.

[9] Appellants requested a stay pending appeal from the Bankruptcy Court as well as this Court. Both requests were denied. *See* **[BK DE 263]**; **[DE 23]**.

**III.     Questions Presented**

This appeal presents two questions for my consideration: (1) whether the Bankruptcy Court erred in declining to invalidate the assignment from the Richmonds to the Debtor; and (2) whether the Bankruptcy Court erred in concluding that the Escalator Provisions were waived for purposes of calculating the cure amount due to Appellants under the Lease.

**IV.     Standard of Review**

District courts sit as appellate courts over bankruptcy decisions. *Miner v. Bay Bank & Trust Co.* (*In re Miner*), 185 B.R. 362, 365 (N.D. Fla. 1995), aff'd, 83 F.3d 436 (11th Cir. 1996). A district court reviews a bankruptcy court's legal conclusions *de novo*, and a bankruptcy court's factual findings for clear error. *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996); Fed. R. Bankr. P. 8013; *In re Gamble*, 168 F.3d 442, 444 (11th Cir. 1999). Mixed questions of law and fact are reviewed *de novo*. *In re Lentek Int'l, Inc.*, 346 Fed. Appx. 430, 433 (11th Cir. 2009).

When district courts review the factual findings of a bankruptcy court, the burden of showing that the bankruptcy court's findings are clearly erroneous is upon the appellant. *Acquisition Corp. of Am. v. Fed. Sav. & Loan Ins. Corp.*, 96 B.R. 380, 382 (S.D. Fla. 1988). A finding of fact is not clearly erroneous unless "this court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been committed." *In re Int'l Admin. Serv., Inc.*, 408 F.3d 689, 698 (11th Cir. 2005) (internal citations omitted).

**V.     Analysis**

    A.     <u>Whether the Bankruptcy Court Erred in Declining to Invalidate the Assignment of the Lease from the Richmonds to the Debtor</u>

Appellants argue that the Bankruptcy Court erred in allowing Appellee to assume the Lease because the assignment of the Lease by the Richmonds to the Debtor did not comply with Florida[10] Statutes Section 689.01 (2008) ("the Statute of Frauds").[11] The Statute of Frauds referenced by Appellants[12] provides, in pertinent part, as follows:

> No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in or out of any messuages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than 1 year, or by the party's lawfully authorized agent, unless by will and testament, or other testamentary appointment, duly made according to law; and no estate or interest, either of freehold, or of term of more than 1 year, or any uncertain interest of, in, to, or out of any messuages, lands, tenements or hereditaments, shall be assigned or surrendered unless it be by instrument

---

[10] "[T]he nature and existence of the debtor's right to property is determined by looking at state law." *In re Thomas*, 883 F.2d 991, 995 (11th Cir.1989). In determining and applying the law of Florida, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (citations omitted).

[11] With the exception of a few sentences implying that Appellants did not have "actual knowledge" of the assignment to the Debtor, *see* **[DE 26, p. 25]**; **[DE 29, p. 11]**, Appellants' briefs focus entirely on the Richmonds' failure to comply with Florida's Statute of Frauds in assigning the Lease to the Debtor. I reject Appellants' "actual knowledge" argument, for in holding that the written assignment provision of the Lease was waived, the Bankruptcy Court specifically found that Appellants or their predecessors "knew of the role of Debtor in the Lease" – a finding that Appellants have failed to demonstrate was clearly erroneous. *Acquisition Corp. of Am.*, 96 B.R. at 382 (noting that "the burden of showing that the Bankruptcy Court's findings are clearly erroneous is upon the Appellant").

[12] Appellants' Initial Brief also mentions Florida Statutes Sections 725.01 and 95.16(1). These statutory provisions are irrelevant for purposes of the instant appeal.

signed in the presence of two subscribing witnesses by the party so assigning or surrendering, or by the party's lawfully authorized agent, or by the act and operation of law.

Fla. Stat. § 689.01.

According to Appellants, Section 689.01 can be asserted at any time to nullify a non-compliant conveyance.[13] In other words, Appellants contend that regardless of whether they and their predecessors recognized the Debtor as the rightful owner of the Lease, Appellants cannot, as a matter of law, be estopped from asserting the Statute of Frauds in order to invalidate the Debtor's interest in the Lease. I disagree.

Under Florida law, a lessor that has accepted rental payments over a period of time may be estopped from raising Section 689.01 in order to invalidate a tenant's leashold interest. *Bodden v. Carbonell,* 354 So. 2d 927, 929 n.1 (Fla. 2d DCA 1978) ("Although the lease does not comply with [Section] 689.01 . . . appellee is estopped by his conduct in accepting rental payments to assert this as a defense.") (citing *Gill v. Livingston*, 29 So. 2d 631 (Fla. 1947)); *see also Lipkin v. Bonita Garden Apartments*, *Inc.,* 122 So. 2d 623, 624 (3d DCA 1960) ("We hold that the defendant-lessees were estopped by their conduct to contend that the lease was invalid" for failure to comply with Section 689.01).[14] Thus, the question I must resolve is not whether Appellants *can* be estopped from relying upon Section 689.01, but rather, whether the record evidence supports the Bankruptcy Court's

---

[13] Although Appellants did not specifically raise the Statute of Frauds before the Bankruptcy Court until the proposed order stage, I will nonetheless consider the issue, as it is undisputed that it was brought to the Bankruptcy Court's attention prior to its decision, albeit in the form of a proposed order. *See* **[DE 28, pp. 26-67]**.

[14] Appellants assert that these cases are distinguishable from the instant case because the lessees were in actual possession of the property at issue. I reject this argument for the reasons set forth below.

6

conclusion that the Statute of Frauds does not require the invalidation of the assignment to the Debtor.

Having reviewed the record and the applicable law, I conclude that Appellants are equitably estopped from raising the Statute of Frauds in an attempt to invalidate Debtor's interest in the Lease. "Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position." *Florida Dept. of Health and Rehabilitative Services v. S.A.P*, 825 So. 2d 1091, 1096 (Fla. 2002). In the *S.A.P.* case, the Florida Supreme Court defined the doctrine as follows:

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which perhaps have otherwise existed, either of property or of contract, or of remedy, as against another person, who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, or of contract or of remedy.

*Id.* at 1097 (quoting *State ex rel. Watson v. Gray*, 48 So. 2d 84, 87-88 (Fla. 1950)).

While the doctrine of equitable estoppel is often associated with cases where a party has induced another to forbear suit until the expiration of the applicable limitations period, *id.* at 1097 n. 11 (citing various cases), the Florida Supreme Court has emphasized that the doctrine of estoppel is not constrained by the nature of the action; instead, "the doctrine of estoppel is applicable in *all cases* where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury." *Id.* at 1098 (emphasis added).

In the instant case, the Bankruptcy Court found that the course of conduct

7

undertaken by Appellants and their predecessors – e.g., cashing rental checks from the Debtor for approximately ten years without restrictive endorsements – reasonably caused the Debtor to believe that the Richmonds' assignment of the Lease had been accepted as valid by the Appellants.[15]  In addition, it is beyond dispute that the Debtor changed its position in a substantial way in reliance on Appellants' conduct, as the Debtor made rental payments pursuant to the Lease over the course of many years and agreed to sub-lease the property to Payless Flea Market in 1995.[16]  *See Skylake Insurance Agency, Inc., v. NMB Plaza, LLC,* 23 So. 3d 175, 178 (3d DCA 2009) (noting that "under some circumstances, estoppel will be applied to preclude a party from invoking Section 689.01" and that "[f]or an estoppel to operate, the tenant must have changed position in more than an insubstantial way").

Because Appellants "have accepted benefits under the [assignment], have placed the [assignee] in [constructive] possession . . . and in all respects have recognized [the assignment] as being an effective conveyance . . . they ought not to be permitted to disavow it now" for failure to comply with the Statute of Frauds.  29 So. 2d at 632.[17]  As a result, the Bankruptcy Court correctly determined that the Richmonds' assignment of the Lease to the Debtor does not warrant invalidation pursuant to Section 689.01.

---

[15] Appellants do not assert that this factual finding was clearly erroneous.

[16] Appellants do not dispute that they (or their predecessors-in-interest) cashed Debtor's rent checks from approximately 1997 until 2007 and were aware of the Payless sub-lease.

[17] It is these facts that distinguish this matter from the case of *S&I Investments v. Payless Flea Market, Inc.,* 2010 WL 1329057 (4th DCA Apr. 7, 2010) (rejecting estoppel argument where lessor "challenged the validity of the lease from the outset . . . and went to great lengths so as to not accept benefits" under the challenged lease).

  B. <u>Whether the Bankruptcy Court Erred in Holding that the Escalator Provisions Were Waived for Purposes of Calculating the Cure Amount</u>

The second issue on appeal is whether the Bankruptcy Court erred in holding that the Escalator Provisions could not be enforced for purposes of calculating the amount of cure owed pursuant to the Lease.  With respect to this issue, the Bankruptcy Court concluded in its October 7, 2009 Order that Appellants could not retroactively enforce the Lease's Escalator Provisions for purposes of calculating the amount of cure.  In reaching this conclusion, the Bankruptcy Court reasoned that the Escalator Provisions had been waived because Appellants and their predecessors-in-interest knew of the provisions yet failed to enforce them during the forty-two year period from 1967 to 2009.  Appellants contend that this determination was in error "because they did not know that [Debtor] was paying them $400 per month while collecting $10,000 per month" from Debtor's sub-lessee.  **[DE 29, pp. 12-13]**.[18]

As both parties correctly acknowledge, "waiver is the voluntary and intentional relinquishment of a known right, or conduct which implies the voluntary and intentional relinquishment of a known right."  *Major League Baseball v. Morsani*, 790 So.2d 1071, 1077 n. 12 (Fla. 2001). "Breaking down waiver into elements, [it] has [been] recognized that three circumstances give rise to a waiver: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the right.  Proof of these elements 'may be express, or implied from conduct or acts that lead

---

[18] Curiously, Appellants do not even attempt to explain how knowledge of the amount of rent collected by Debtor from its sub-tenant has any bearing whatsoever on whether Appellants' waived their right to enforce the Escalator Provisions against the Debtor. I conclude that it does not.

a party to believe a right has been waived.' " *Bueno v. Workman*, 20 So. 2d 993, 998 (Fla. 4th DCA 2009) (quoting *LeNeve v. Via S. Fla., L.L.C.*, 908 So. 2d 530, 535 (Fla. 4th DCA 2005)).  Applying Florida law in the bankruptcy context, the Eleventh Circuit has noted that "[w]aiver is usually a question of fact since it concerns the intent of the parties."  *In re Garfinkle*, 672 F.2d 1340, 1348 (11th Cir. 1982) (citation omitted).  "Resolving factual issues depends upon the credibility of witnesses and the Bankruptcy Judge's opportunity to view and hear the testimony is of paramount importance."  *Id.* (citation omitted).

In the instant case, the Bankruptcy Court found – after hearing testimony and reviewing the evidence presented – that: (1) the Escalator Provisions are waivable; (2) the Appellants had both actual and constructive knowledge of the Escalator Provisions; and (3) the acceptance of un-escalated rental payments over course of four decades by Appellants and their predecessors-in-interest evidenced an intent to relinquish their rights under the Escalator Provisions.  *See* **[BK DE 208, pp. 9-10]**.  While Appellants challenge the propriety of these findings in conclusory fashion, they fail to cite a single piece of record evidence purporting to demonstrate that these findings were clearly erroneous.  Nor have they cited any legal authority indicating that the Escalator Provisions are not waivable as a matter of law.[19]  Because Appellants have failed to carry their burden with respect to the Bankruptcy Court's findings and conclusions, I affirm.  *See Acquisition Corp. of Am.*, 96 B.R. 380 at 382.

---

[19] To the contrary, my research reveals that the Bankruptcy Court was correct in concluding that lease provisions governing rental payments may be waived by a lessor pursuant to Florida law.  *See, e.g., Gonzalez v. Archer*, 718 So. 2d 889, 890 (Fla. 3d DCA 1998) (holding that lessor waived provision of lease governing rental payments by accepting payments without protest).

### IV. Conclusion

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that:

1. The decision of the Bankruptcy Court is hereby AFFIRMED.

2. All pending motions are DENIED AS MOOT and all upcoming hearings are CANCELLED.

3. This case is CLOSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 3RD day of June, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc:
Bankruptcy Judge Raymond B. Ray
Counsel of Record